IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **CLARENCE F. JENKINS, JR.,** )<br> ) <br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**PLUMBERS AND PIPEFITTERS UNION** )<br>**LOCAL NO. 614, and CS3, INC.,** )<br> )<br>    **Defendants.** ) | **No. 10-2929** |

---

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Before the Court is Defendant Plumbers and Pipefitters Union Local No. 614's (the "Union") October 25, 2012 Motion for Summary Judgment. (Mot. for Summ. J., ECF No. 33.) Pro se Plaintiff Clarence F. Jenkins, Jr. ("Jenkins") filed a Response on January 2, 2013. (Resp., ECF No. 40.) On January 22, 2013, the Union replied. (Reply, ECF No. 49.) The Court referred the Union's Motion to United States Magistrate Judge Charmiane G. Claxton on March 27, 2013. (ECF No. 50.) On April 16, 2013, the Magistrate Judge entered a Report and Recommendation (the "Report") recommending that the Union's Motion be granted. (Report, ECF No. 51.) Jenkins objected to the Magistrate Judge's Report on May 1, 2013. (Obj., ECF No. 55.) The Union responded to Jenkins' objection on May 17, 2013. (Resp. to Obj., ECF No. 56.)

For the following reasons, the Court OVERRULES Jenkins' objections and ADOPTS the Magistrate Judge's Report. The Union's Motion for Summary Judgment is GRANTED.

## I. Background

On December 22, 2010, Jenkins filed a pro se Complaint against his employer, CS3, Inc. ("CS3"), and the Union, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). (Compl., ECF No. 1.)[1] On November 21, 2011, Jenkins filed an Amended Complaint against CS3 and the Union. (Am. Compl., ECF No. 21.)

Jenkins alleges that he is an African-American male who is a "dues paying member" of the Union and who was "working his way through the apprenticeship program." (Id. ¶¶ 5, 10). He claims that he was dismissed because of his race and was replaced by an "inexperienced White apprentice" who was then promoted to "journeyman steam fitter/service tech." (Id. ¶ 6.) Jenkins alleges that the Union "continues to discriminate against him based on his race" by referring Caucasian members for positions that, based upon the "applicable laws, rules, and by-laws of Local No. 614 should be his employment." (Id. ¶ 9.) He claims that the Union has not contacted him in the previous eighteen months about job placement. (Id.) Jenkins alleges that he

---

[1] Jenkins' Complaint also brought claims against an individual defendant, John Jerkins, which have since been dismissed. (Order of Partial Dismissal, ECF No. 7.)

filed a charge against the Union with the Equal Employment Opportunity Commission ("EEOC") claiming retaliation and discrimination on the basis of race (the "Charge"). (Id. ¶ 11.)[2] He alleges that he filed the Charge on October 14, 2008, but the Charge is date-stamped as received on December 11, 2008. (Id.; Charge, ECF No. 1)  The Charge specifically alleges that two Caucasian employees, Charles Minck and Williard Strain, were given job placements instead of Jenkins. (Charge.)  The Charge states that Strain was offered two different job assignments and that Jenkins has not been offered any referrals since October 2008. (Id.)  The Charge states that, when Strain declined an assignment, his name was not moved to the bottom of the assignment list. (Id.)  The Charge states that Minck was offered a job assignment where Plaintiff was "supposed to have been rehired." (Id.)  The EEOC issued a Dismissal and Notice of Rights on or about September 26, 2010. (Am. Compl. ¶ 12.)

The Magistrate Judge found that the Union represents Apprentice and Journeymen employees in the plumbing and pipefitting industries, and that it uses a "referral system" or "hiring hall" method to assist members in finding employment. (Report 3-4.)  Members who are not currently employed are eligible to add their names to the "Out of Work List" to obtain

---

[2] The EEOC Charge of Discrimination was filed with Jenkins' initial Complaint. Jenkins' Amended Complaint does not include his EEOC Charge of Discrimination, but he does reference it in his Amended Complaint. (Compl.)

3

referrals (the "List"). (Id. 4.) The List is maintained in chronological order by the date members sign up. (Id.) When a contractor contacts the Union with a request for a worker without specific special skills or qualifications, the Union refers members in the order in which they signed the List. (Id.) If a contractor requests particular skills or qualifications, the Union refers the first worker on the List with those skills or qualifications. (Id.) Contractors may also request a specific member by name, and may reject any member referred by the Union. (Id.)

The Magistrate Judge found that Jenkins had been placed through the hiring hall on a number of occasions between 2004 and 2010. (Id. 5.) Jenkins received an early promotion to Journeyman status on January 12, 2009, which allowed him to work at a higher pay grade. (Id.) At the time of the placements Jenkins complains of, he was a Fifth Year Apprentice. (Id. 5-6.) Strain was referred for the contractor request to which Jenkins objects because Strain was the Fifth Year Apprentice who had been on the List the longest. He was not moved to the bottom of the List after declining the assignment, "but that had become ordinary practice at the Union for all members." (Id. (internal citations omitted.)) Minck, the Second Year Apprentice who had been on the List longest, was referred for the contractor request to which Jenkins objects because the

4

contractor specified that its budget could only cover the pay grade of a First or Second Year Apprentice. (Id. 5-6.)

The Magistrate Judge also found that the Union had provided statistics showing the percentage of referrals for African-American members in 2008, 2009, 2010, and 2011. (Id. 6.) In 2008 African-Americans were 8% of membership and received 23% of referrals, in 2009 they were 10% of membership and received 17% of referrals, in 2010 they were 10% of membership and received 15% of referrals, and in 2011 they were 10% of membership and received 11% of referrals. (Id.)

The Magistrate Judge's proposed conclusions of law are as follows: Jenkins has not alleged direct discrimination on the basis of race and there is no evidence in the record that race is a motivating factor in Union referrals. (Id. 9.) Jenkins cannot state a prima facie case of discrimination based on circumstantial evidence because he has not established that there is a genuine issue of material fact about whether he suffered an adverse employment action. (Id. 10.) The Union's failure to move Strain to the bottom of the List cannot constitute an adverse employment action because, even if it was improper, Jenkins was employed at the time Strain declined the Union's referral and was therefore not on the List. (Id. 11.) Because Jenkins was employed at the time of the Union's alleged preferential treatment of Strain and Minck, he was not qualified

5

for the positions he sought because he was not eligible to be referred. (Id. 12.)  There is no evidence in the record to support Jenkins' contention that he was treated differently than similarly situated non-minority members.  (Id.)  The evidence supports a conclusion that the Union's hiring hall operated on set procedures that were applied equally to all members and referrals. (Id.)

Jenkins objects to the Magistrate Judge's recommendation on three grounds: (1) it "disregards relevant and admissible data pertaining to the status of African-American Union members"; (2) it "dismisses as inconsequential the fact that plaintiff has not received a referral from defendant since June 2010 while using a series of steady referrals as dispositive evidence"; and (3) it is "clearly erroneous and contrary to law" because "evidence and all justifiable inferences based on facts must be viewed in a light most favorable to the non-moving party."  (Obj. 1.)

**II.  Jurisdiction**

Jenkins brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.  The Court has federal question jurisdiction under 28 U.S.C § 1331.

**III. Standard of Review**

A "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b); see also 28 U.S.C. § 636(b)(1)(C).

After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court need not "'review . . . a [magistrate judge's] factual or legal conclusions [] under a de novo or any other standard, when neither party objects to those findings.'" Satkiewicz v. Michigan, No. 2:11-cv-14370, 2012 U.S. Dist. LEXIS 124403, at *3 (E.D. Mich. Aug. 31, 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). The Supreme Court has "expressly concluded that a district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed." United States v. Maness, No. 10-20348, 2012 U.S. Dist. LEXIS 92238, at *2 (W.D. Tenn. July 3, 2012) (citing Arn, 474 U.S. at 151). Otherwise, a district court would be forced "to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report. . . . [which] would be an inefficient use of judicial resources." Id. (internal citations omitted); accord Javaherpour v. United States, 315 Fed. App'x. 505, 509 (6th Cir. 2009).

**IV. Analysis**

Under Rule 56 of the Federal Rules of Civil Procedure, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

7

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 Fed. App'x. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 Fed. App'x. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-

8

moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (internal citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The Magistrate Judge recommended that the Court grant the Union's October 25, 2012 Motion for Summary Judgment, filed in opposition to Jenkins' Title VII claim of racial discrimination. (Report 13.) Jenkins has made three objections to the Magistrate Judge's conclusion that Union is entitled to summary judgment. (Obj. 1.) The Court ADOPTS those findings of fact and conclusions of law to which no objection has been made.

9

Maness, 2012 U.S. Dist. LEXIS 92238, at *2 (citing Arn, 474 U.S. at 151).

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A Title VII plaintiff may establish a case of unlawful discrimination through direct or circumstantial evidence. Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 649 (6th Cir. 2012). The use of circumstantial evidence is important because direct evidence of discrimination is rarely available. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). The plaintiff need only provide one form of evidence or the other, not both. Id. at 348-49.

"'Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Ondricko, 689 F.3d at 649 (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)). "'[O]nce a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by

10

impermissible discrimination.'" Id. (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)).

"Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citing Kline, 128 F.3d at 348). Title VII claims brought under a theory of circumstantial evidence are analyzed under the burden-shifting framework first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-02 (1973), and later modified by Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Under this framework, the complainant must carry the initial burden of establishing a prima facie case of discrimination by his or her employer. DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004). To make out a prima facie case of race discrimination based on a union's failure to refer for employment, the plaintiff must demonstrate by a preponderance of the evidence "(1) membership in the protected class; (2) that he or she suffered from an adverse action; (3) that he or she was qualified for the position; and (4) that he or she was treated differently from similarly situated members of the unprotected class." Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 402-03 (6th Cir. 1999); see also Herron v.

11

Int'l Ass'n of Bridge Workers Local Union 25, No. 96-1335, 1998 U.S. App. LEXIS 1322, *18-22 (6th Cir. Jan. 27, 1998).

If the plaintiff successfully makes out a prima facie case, a presumption of unlawful discrimination arises against the employer, who then bears the burden of articulating "'some legitimate, non-discriminatory reason for the employee's rejection.'" DiCarlo, 358 F.3d at 414 (quoting McDonnell Douglas, 411 U.S. at 802). "'[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Id. at 414-15. At the motion for summary judgment stage, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry." Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000).

The Magistrate Judge has concluded that Jenkins cannot demonstrate a genuine dispute for trial. Because Jenkins does not allege direct evidence, the Court analyzes his objections under the McDonnell Douglas burden-shifting framework.

Jenkins argues that the Magistrate Judge disregarded statistics[3] indicating racial discrimination. (Obj. 1, 2.) The

---

[3] "Appropriate statistical data showing an employer's pattern of conduct towards a protected class as a group can . . . create an inference that a

12

Court understands this argument to address the fourth element of a discrimination case.

"'To make a comparison of a [] plaintiff's treatment to that of non-minority employees, the plaintiff must show that the [compared-to non-minority employees] are similarly situated in all respects.'" Bryant v. Rolling Hills Hosp., LLC, 836 F. Supp. 2d 591, 617 (M.D. Tenn. 2011) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). This means that the individuals with whom the plaintiff seeks to compare his treatment must have engaged in the same conduct as the plaintiff "'without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" Id. The plaintiff is not required, however, "to demonstrate an exact correlation between himself and others similarly situated; rather, he [must] show [] that he and his proposed comparators [are] similar in all relevant respects." Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 751 (6th Cir. 2012) (citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)).

The statistics Jenkins appears to reference were submitted by the Union and incorporated into the Magistrate Judge's findings of fact. (Report 6.) The statistics show that:

---

defendant discriminated against individual members of the class." Barnes v. GenCorp, Inc., 896 F.2d 1457, 1466 (6th Cir. 1990).

13

> In 2008, African-American members constituted 8% of the Union's membership and received 23% of referrals through the hiring hall. In 2009, African-Americans constituted 10% of the Union's membership and received 17% of the referrals through the hiring hall. In 2010, African-Americans constituted 10% of the Union's membership and received 15% of the referrals through the hiring hall. In 2011, African-Americans constituted 10% of the Union's membership and received 11% of the referrals through the hiring hall.

(Id.) Jenkins asserts that these data constitute circumstantial evidence of discrimination against African-Americans, including Jenkins. (Obj. 2.) According to the unchallenged findings of the Magistrate Judge, however, the Union hiring hall procedures contemplate a number of variables not reflected in the data. (Report 4.) Although he need not "demonstrate an exact correlation" between himself and his comparators, Jenkins is required to show that they are "similar in all relevant respects." Ercegovich, 154 F.3d at 352. The statistics on which Jenkins relies do not provide any information about members' classifications, years of experience, or areas of specialty. The Union has six classifications of workers: Journeymen and First, Second, Third, Fourth, and Fifth Year Apprentices. (Report 4.) Each classification corresponds to different skills and qualifications. (Id.) Each classification also corresponds to a different pay grade. (Id.) Contractors requesting workers from the hiring hall submit requests detailing the characteristics of the workers they desire. (Id.)

14

The Union, in turn, refers not simply the first member on the List but the first member on the List who possesses the qualifications required for a given job. (Id.) The qualifications of a given member are relevant considerations in the referral process. The data on which Jenkins relies do not account for these factors sufficiently.

Even if the data suggested disparate treatment of African-American members, it would be impossible to discern whether the difference was on account of race or resulted from employer preferences for members who possessed certain professional characteristics. See Blair v. Henry Filters, 505 F.3d 517, 530 n.12 (6th Cir. 2007) (data used as circumstantial evidence are of doubtful relevance to age discrimination claims because the "average age" statistic does not separate employees who retire or resign from those who are terminated); Hilbert v. Ohio Dep't of Rehab. & Corr., 121 Fed. App'x 104, 110 (6th Cir. 2005) (data used as both circumstantial and direct evidence are insufficient, taken alone, to make out prima facie case of race discrimination because the data do not eliminate any of the several other possible explanations for the disparity in treatment).

Assuming arguendo that Jenkins' comparators are sufficiently similarly situated, the statistics themselves reveal that African-American union members have consistently

received a higher percentage of referrals than non-African-American members. The statistics weigh against Jenkins' claim. Without more, Jenkins cannot establish the fourth element of a prima facie case of race discrimination. See Kraemer v. Luttrell, 189 Fed. App'x 361, 368 n.8 (6th Cir. 2006) (an African-American plaintiff could not establish the comparator element in a denial of promotion claim without providing more circumstantial evidence because the only evidence relied on by plaintiff was data showing a higher percentage of African-Americans were promoted than non-African-Americans).

Jenkins objects to the Magistrate Judge's conclusion that Jenkins' eighteen months on the List without receiving a referral do not constitute an adverse employment action. (Obj. 1, 3.) The Court understands this argument to address the second and third elements of prima facie discrimination. Jenkins does not cite any case to support his argument.

In the context of a union referral system, a plaintiff satisfies the adverse employment element by showing "that [he was] not referred despite [his] qualifications." Herron, 1998 U.S. App. LEXIS 1322, *18-22. Although Jenkins claims adverse action because he was not referred for over eighteen months while his name was on the List, he has not provided any evidence that jobs became available during that time or, if so, whether he was qualified for those jobs. Jenkins cannot establish the

16

second or third element of a prima facie case of race discrimination.

Jenkins argues that the Magistrate Judge's Report is "clearly erroneous and contrary to law in that the evidence and justifiable inferences based on facts must be viewed in a light most favorable to the non-moving party." (Obj. 1.) Although the rule of law Jenkins cites is firmly established in the Sixth Circuit, Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001), he does not expand on his argument by specifying what evidence and justifiable inferences were not viewed in a light most favorable to him. "Failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection." McCready v. Kamminga, 113 Fed. App'x 47, 49 (6th Cir. 2004). A general objection "is considered the equivalent of failing to object entirely." Id. (citing Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). Because Jenkins' objection is a general objection, it is not well taken.

Jenkins has not demonstrated that he was treated differently than similarly situated non-protected employees. He has not demonstrated the he suffered an adverse employment action or that he was qualified for any referrals that might have arisen during his relevant eighteen months on the List. Jenkins has failed to establish a prima facie case of employment

17

discrimination as a matter of law. His objections do not set forth specific facts showing that there is a genuine dispute for trial. Adopting the Magistrate Judge's Report is consistent with the policies underlying 28 U.S.C. § 636, specifically judicial economy and protecting against the "functions of the district court [being] effectively duplicated as both the magistrate and the district court perform identical tasks." Howard, 932 F.2d at 509.

## V. Conclusion

For the foregoing reasons, Jenkins' objections are OVERRULED. The Magistrate Judge's Report and Recommendation is ADOPTED. The Union's Motion for Summary Judgment is GRANTED.

So ordered this  6th  day of September, 2013.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

18