```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```

```
CLARENCE F. JENKINS, JR.,        )
                                 )
     Plaintiff,                  )
                                 )
v.                               )    No. 10-2929
                                 )
PLUMBERS AND PIPEFITTERS UNION   )
LOCAL NO. 614, and CS3, INC.,    )
                                 )
     Defendants.                 )
```

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant CS3, Inc.'s ("CS3") October 26, 2012 Motion for Summary Judgment. (Mot. for Summ. J., ECF No. 34.) Pro se Plaintiff Clarence F. Jenkins, Jr. ("Jenkins") responded on December 28, 2012. (Resp., ECF No. 39.) On January 14, 2013, CS3 replied. (Reply, ECF No. 48.) The Court referred CS3's Motion to United States Magistrate Judge Charmiane G. Claxton on March 27, 2013. (ECF No. 50.) On April 16, 2013, the Magistrate Judge entered a Report and Recommendation ("Report") recommending that CS3's Motion be granted. (Report, ECF No. 52.) Jenkins objected to the Magistrate Judge's Report on April 30, 2013. (Obj., ECF No. 54.) CS3 responded on May 17, 2013. (Resp. to Obj., ECF No. 57.)

For the following reasons, the Court OVERRULES Jenkins' objections and ADOPTS the Magistrate Judge's Report. CS3's Motion for Summary Judgment is GRANTED.

## I. Background

On December 22, 2010, Jenkins filed a pro se Complaint against CS3, his employer, and Plumbers and Pipefitters Union Local No. 614 (the "Union"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). (Compl., ECF No. 1.)[1] On November 21, 2011, Jenkins filed an Amended Complaint against CS3 and the Union. (Am. Compl., ECF No. 21.)

Jenkins alleges that he was dismissed from his job at CS3 on the basis of illegal race discrimination. (Id. at ¶ 6.) He claims that, after his dismissal, CS3 hired an "inexperienced White apprentice, and then promoted him to journeyman steam fitter/service tech." (Id.) Jenkins alleges that, after filing a charge (the "Charge") against CS3 with the Equal Employment Opportunity Commission ("EEOC"), the parties "agreed to monetary damages and that [Jenkins] was eligible for re-hire as a journeyman steamfitter/service tech." (Id. at ¶ 7.) Jenkins alleges that CS3 "continues to hire White journeymen steam

---

[1] Jenkins' Complaint also brought claims against an individual defendant, John Jerkins, which have since been dismissed. (Order of Partial Dismissal, ECF No. 7.)

2

fitter/service techs, but he has never been re-hired as stated in the EEOC Settlement Agreement." (Id. at ¶ 8.)

The Magistrate Judge found that CS3 provides mechanical and HVAC services to commercial builders. (Report 2.) CS3 hires plumbers and pipefitters from the Union. (Id.) Union members are classified based on six skill levels: First Year Apprentice, Second Year Apprentice, Third Year Apprentice, Fourth Year Apprentice, Fifth Year Apprentice, and Journeyman. (Id.) Each classification corresponds to a different pay grade. (Id.) The Union uses a hiring hall system to refer eligible members to contractors like CS3. (Id.) Contractors that use the Union's hiring hall can request the next member on the Out of Work List (the "List"), a member with a certain classification or skills, or a specific member by name. (Id.) In making a request for union labor, CS3 assesses its labor needs and then specifically requests a labor level that corresponds to the technical and economic demands of a given project. (Id.)

The Magistrate Judge found that Jenkins was referred through the hiring hall system to work at CS3 from December 31, 2005 until June 15, 2008. (Id. at 3.) As the project ended, CS3's President, John Jerkins ("Jerkins"), notified the Union's business manager, Robert Sproles ("Sproles"), that Jerkins was getting ready to lay off two Journeymen. (Id.) Sproles advised Jerkins that Sproles did not have another job on which to place

the Journeymen and asked Jerkins if he would lay off two Senior Apprentices and keep the Journeymen, as Sproles would be able to place the Apprentices immediately. (Id.)  Jerkins agreed to do so and laid off Jenkins and another Apprentice on June 15, 2008. (Id.)  Jerkins affirmed that race was not a factor in his decision to lay off Jenkins and that it was his understanding that Jenkins would be immediately reassigned through the hiring hall to another contractor. (Id.)  Jenkins was reassigned to another contractor on June 16, 2008.

The Magistrate Judge found that, after Jenkins was laid off from CS3, he timely filed his Charge with the EEOC. (Id.)  Jenkins and CS3 resolved the Charge by entering into an EEOC-brokered Mediation Settlement Agreement (the "MSA") on August 12, 2008. (Id.)  Paragraph 7(B) of the MSA provided that Jenkins was "eligible for re-hire at journeyman steam fitter/service tech at $27.60 each hour at any of [CS3's] job sites in Tennessee." (Id. at 4.)

The Magistrate Judge found that, in December 2008, based on the requirements of a specific job, CS3 requested a First or Second Year Apprentice from the Union. (Id.)  The Union referred Charles Minck ("Minck") to CS3 because he was the next Second Year Apprentice on the List. (Id.)  At the time of Minck's referral, Jenkins was a Fifth Year Apprentice, was overqualified for the CS3 position, and required pay of nearly

4

$9.00 per hour more than the pay of a Second Year Apprentice. (Id.)

The Magistrate Judge found that, in response to the instant Motion, Jenkins filed an exhibit listing the name, race, classification, date of referral, and layoff date of union members at CS3 from June 4, 2008 until June 8, 2012 (the "Employment List"). (Id.) The Employment List states that forty-three Caucasian Journeymen, six African-American Journeymen, eleven Caucasian Apprentices, one African-American Apprentice, and one Caucasian "helper" were referred during this four-year period. (Id.)

The Magistrate Judge's proposed conclusions of law are as follows: Jenkins has not alleged direct discrimination on the basis of race and there is no evidence in the record that race was a motivating factor in CS3's hiring decision. (Id. at 8.) Jenkins cannot state a prima facie case of discrimination based on circumstantial evidence because he has not established that there is a genuine issue of material fact as to the elements of his prima facie case. (Id.) CS3 did not violate the MSA by not rehiring Jenkins because, although CS3 promised that Jenkins would be "eligible" for rehire, it did not promise to reinstate his employment. (Id. at 9.) CS3's hiring of Minck did not constitute an adverse employment action because at that time Jenkins was employed in the pipefitting industry. (Id.) CS3

5

had requested a First or Second Year Apprentice, and Jenkins was a Fifth Year Apprentice. (Id.) Jenkins was further ineligible due to his classification. (Id.) There is no evidence in the record about the circumstances surrounding the referrals on the Employment List. On some of the dates, Jenkins was ineligible for referral because of concurrent employment. (Id.) On other dates, there is no proof about when Jenkins' name was added to the List or whether the members receiving referrals had higher priority. (Id. at 10.) Thus, there is no genuine issue of material fact about whether the referrals constituted adverse employment actions. (Id.)[2]

Jenkins objects to the Magistrate Judge's recommendation on four grounds: 1) it "disregards the plain meaning and intent of the MSA entered into by the parties;" 2) it "disregards a list of similarly situated non-minority journeymen hired by CS3 that covers the time period from the day plaintiff was dismissed until June 2013;" 3) it disregards the possibility that CS3, in honoring the MSA, could have directly requested Jenkins by name; and 4) it is "clearly erroneous and contrary to law" because "evidence and justifiable inferences based on facts must viewed in a light most favorable to the nonmoving party." (Obj. 1-2.)

---

[2] The Magistrate Judge also concluded that, although Jenkins argued retaliation in his Response to CS3's Motion, he did not assert a retaliation argument in his Second EEOC Charge, his Complaint, or his Amended Complaint. Thus, a claim of retaliation has not been properly pled.

## II. Jurisdiction

Jenkins brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. The Court has federal question jurisdiction under 28 U.S.C § 1331.

## III. Standard of Review

A "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); see also 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court need not "'review . . . a [magistrate judge's] factual or legal conclusions [] under a de novo or any other standard, when neither party objects to those findings.'" Satkiewicz v. Michigan, No. 2:11-cv-14370, 2012 U.S. Dist. LEXIS 124403, at *3 (E.D. Mich. Aug. 31, 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). The Supreme Court has "expressly concluded that a district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed." United States v. Maness, No. 10-20348, 2012 U.S. Dist. LEXIS 92238, at *2 (W.D. Tenn. July 3, 2012) (citing Arn, 474 U.S. at 151). Otherwise, a district court would be forced "to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied

7

with the magistrate's report. . . . [which] would be an inefficient use of judicial resources." Id. (internal citations omitted); accord Javaherpour v. United States, 315 Fed. App'x. 505, 509 (6th Cir. 2009).

**IV. Analysis**

Under Rule 56 of the Federal Rules of Civil Procedure, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. App'x. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party

8

must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. Beckett v. Ford, 384 Fed. App'x. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (internal citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party must point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d

9

289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The Magistrate Judge recommended that the Court grant CS3's October 26, 2012 Motion for Summary Judgment, filed in opposition to Jenkins' Title VII claim of racial discrimination. (Report 11.) Jenkins has made four objections to the Magistrate Judge's conclusion that CS3 is entitled to summary judgment. (Obj. 1-2.) The Court ADOPTS those findings of fact and conclusions of law to which no objection has been made. Maness, 2012 U.S. Dist. LEXIS 92238, at *2 (citing Arn, 474 U.S. at 151).

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A Title VII plaintiff may establish a case of unlawful discrimination through direct or circumstantial evidence. Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 649 (6th Cir. 2012). The use of circumstantial evidence is important because direct evidence of discrimination is rarely available. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). The plaintiff need only provide one form of evidence or the other, not both. Id. at 348-49.

10

"'Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Ondricko, 689 F.3d at 649 (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)). "'[O]nce a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination.'" Id. (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)).

"Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citing Kline, 128 F.3d at 348). Title VII claims brought using circumstantial evidence are analyzed under the burden-shifting framework first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-02 (1973), and later modified by Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Under this framework, the complainant must carry the initial burden of establishing a prima facie case of discrimination by

11

his or her employer. DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004). To make out a prima facie case of race discrimination, the plaintiff must demonstrate by a preponderance of the evidence that "(1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees." Id.

If the plaintiff successfully makes out a prima facie case, a presumption of unlawful discrimination arises against the employer, who then bears the burden of articulating "'some legitimate, non-discriminatory reason for the employee's rejection.'" Id. (quoting McDonnell Douglas, 411 U.S. at 802). "'[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Id. at 414-15. At the motion for summary judgment stage, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry." Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000).

The Magistrate Judge concluded that Jenkins cannot demonstrate a genuine dispute for trial. Because Jenkins does

not allege direct evidence, the Court analyzes his objections under the McDonnell Douglas burden-shifting framework.

Jenkins' first objection is that the Magistrate Judge disregarded the plain meaning and intent of the MSA. (Obj. 1-3.) Specifically, Jenkins contends that paragraph 7(B) of the MSA guaranteed his reinstatement at CS3. Paragraph 7(B) provides that: "[CS3] further agrees that [Jenkins] is eligible for re-hire at journeyman steamfitter/service tech at $27.50 each hour at any [of] its job sites in Tennessee." (Id. at 2.) The Magistrate Judge concluded that this provision does not guarantee Jenkins employment but provides that he would be eligible for rehire at CS3. The Court understands this argument to address the second element of prima facie discrimination.

Jenkins offers no authority for his argument. The question is one of contract interpretation. A settlement agreement is a contract. Neely v. Miller Brewing Co., Inc., 25 Fed. App'x 370, 372 (6th Cir. 2002) (internal citation omitted). Words used in a contract are to be interpreted according to their "usual, natural, and ordinary meaning . . . ." Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383 (6th Cir. 2007) (internal citations omitted). A federal court construing an EEOC settlement agreement in the context of a Title VII claim must avoid a strained construction that creates ambiguities. Jenkins' interpretation of paragraph 7(B) of the MSA strains the

13

natural and ordinary meaning of that paragraph. The MSA does not guarantee Jenkins reinstatement at CS3; it merely provides that Jenkins is not barred from future employment at CS3 as a condition of settling the Charge. Jenkins' adverse employment action objection is not well taken.

Jenkins' third objection is closely related to his first. He contends that the Magistrate Judge disregarded CS3's ability to request union members by name through the hiring hall. (Obj. 1, 4.) A request by name allows a contractor to employ any member in the hiring hall regardless of the named member's priority level on the List. (Id. at 4.) Jenkins contends that CS3's refusal to request him by name constituted an adverse employment action. (Id.) This argument goes to the second element of prima facie race discrimination. That CS3 had the option of requesting Jenkins does not constitute an adverse employment action. The MSA only provides that Jenkins is "eligible" for rehire. The MSA does not guarantee future reinstatement with CS3. Jenkins' third objection is not well taken.

Jenkins' second objection is that the Magistrate Judge improperly disregarded the Employment List. (Id. at 1, 3.) Jenkins asserts that the information on the Employment List is circumstantial evidence of discrimination against African-Americans, including himself. (Id. at 2.) The Court

14

understands this argument to address the fourth element of a prima facie discrimination case.

"'To make a comparison of a [] plaintiff's treatment to that of non-minority employees, the plaintiff must show that the [compared-to non-minority employees] are similarly situated in all respects.'" Bryant v. Rolling Hills Hosp., LLC, 836 F. Supp. 2d 591, 617 (M.D. Tenn. 2011) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). This means that the individuals with whom the plaintiff seeks to compare his treatment must have engaged in the same conduct as the plaintiff "'without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" Id. The plaintiff is not required "to demonstrate an exact correlation between himself and others similarly situated; rather, he [must] show [] that he and his proposed comparators [are] similar in all relevant respects." Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 751 (6th Cir. 2012) (citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)).

Jenkins submitted the Employment List as part of his Response to CS3's Motion to Dismiss. (Report 5.) The Employment List shows that CS3 received referrals of forty-three Caucasian Journeymen, six African-American Journeymen, eleven Caucasian Apprentices, one African-American Apprentice, and one

15

Caucasian helper. (Id.) It does not show how long the referred members were on the List before their referral to CS3. Jenkins does not show what his position on the List was after becoming eligible for referral or during the referral of the other members.

Although he need not "demonstrate an exact correlation" between himself and his comparators, Jenkins is required to show that they are "similar in all relevant respects." Ercegovich, 154 F.3d at 352. According to the undisputed findings of the Magistrate Judge, contractors like CS3 request union labor through the hiring hall system on a first-in-first-out basis. (Report 2.) Although Jenkins compares himself to non-minority Journeymen, he makes no showing of his comparators' priority level on the List relative to his own priority level. Without that information, it is impossible to discern by looking at the Employment List whether the Caucasian Journeymen gained referral because of unlawful discrimination or because they had been on the List longer than Jenkins. See Blair v. Henry Filters, 505 F.3d 517, 530 n.12 (6th Cir. 2007) (data used as circumstantial evidence are of doubtful relevance to age discrimination claims because the "average age" statistic does not separate employees who retire or resign from those who are terminated); Hilbert v. Ohio Dep't of Rehab. & Corr., 121 Fed. App'x 104, 110 (6th Cir. 2005) (data used as circumstantial evidence are insufficient,

16

taken alone, to make out prima facie case of race discrimination because the data do not eliminate any of the several other possible explanations for the disparity in treatment).

Jenkins' fourth objection is that the Magistrate Judge's Report is "clearly erroneous and contrary to law in that the evidence and justifiable inferences based on facts must be viewed in a light most favorable to the non-moving party." (Obj. 2.)  Although the rule of law Jenkins cites is firmly established in the Sixth Circuit, Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001), he does not expand on his argument by specifying what evidence and justifiable inferences were not viewed in a light most favorable to him. "Failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection."  McCready v. Kamminga, 113 Fed. App'x 47, 49 (6th Cir. 2004).  A general objection "is considered the equivalent of failing to object entirely."  Id. (citing Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). Because Jenkins' objection is a general objection, it is not well taken.

Jenkins has not demonstrated the he suffered an adverse employment action.  He has not demonstrated that he was treated differently than similarly situated non-protected employees.  He has not made any showing of his qualification for referral to

17

CS3. Jenkins has failed to establish a prima facie case of employment discrimination as a matter of law. His objections do not set forth specific facts showing that there is a genuine dispute for trial. Adopting the Magistrate Judge's Report is consistent with the policies underlying 28 U.S.C. § 636, specifically judicial economy and protecting against the "functions of the district court [being] effectively duplicated as both the magistrate and the district court perform identical tasks." Howard, 932 F.2d at 509.

**V.  Conclusion**

For the foregoing reasons, Jenkins' objections are OVERRULED. The Magistrate Judge's Report and Recommendation is ADOPTED. CS3's Motion for Summary Judgment is GRANTED.

So ordered this  6th  day of September, 2013.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE